E-FILED
Friday, 24 July, 2026 02:53:33 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MORGAN COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04217-SLD-RLH |
| | ) | |
| HOBBY TOWN UNLIMITED, INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER</u>

Before the Court is Plaintiff Morgan Cole's motion for default judgment, ECF No. 25. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART. Additionally, because several citations in Plaintiff's motion appear to be fabricated or do not support the proposition for which they are cited, Attorney David Baldemar Reyes, Plaintiff's counsel, is ORDERED to show cause why he should not be sanctioned.

**BACKGROUND[1]**

### I.    Factual Background

Defendant Hobby Town Unlimited, Inc. is a company selling a variety of hobby and leisure products both in brick-and-mortar stores and online at Hobbytown.com ("the website"). Defendant accepts online delivery orders through the website. Plaintiff is a visually impaired and legally blind resident of Henry County, Illinois. He requires screen-reading software to read website content. Plaintiff cannot use a computer mouse to navigate websites because he cannot

---

[1] Unless otherwise noted, the facts related herein are taken from the Amended Complaint, ECF No. 12, and the Court accepts the allegations relating to liability as true by virtue of Defendant's default. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012).

see the cursor move across the screen or otherwise complete the requisite visual activities. Consequently, Plaintiff is limited to using a keyboard to navigate websites.

While using his screen reader, Plaintiff visited the website on April 7, 2025, intending to purchase a LEGO set.  Plaintiff alleges that he was unable to purchase the LEGO set because of accessibility issues.  Specifically, Plaintiff noticed a lack of alternative text embedded beneath images, preventing his screen reader from vocalizing a description of the image.  Interactive elements on the website were unlabeled, so the screen reader did not announce their names, leaving Plaintiff unable to understand their purpose.  The "skip to content" link, which should allow keyboard users to skip the navigation menu and move the keyboard focus to the main content, was implemented incorrectly, forcing Plaintiff to tab through all sub-menu links to navigate.  This is merely a sample of the issues Plaintiff alleges.  As a result of these issues, the website requires the use of a mouse to complete a transaction, rendering it essentially impossible for blind users like Plaintiff to purchase a product on the website.  Plaintiff alleges that he still wants to purchase a LEGO set on the website and would immediately visit the website again if the accessibility barriers were removed.

## II.     Procedural History

Plaintiff initiated this action in the Northern District of Illinois on April 15, 2025, naming Amain.com, Inc. as the defendant.  *See* Compl., ECF No. 1.  On July 17, 2025, Plaintiff filed the operative Amended Complaint and substituted Hobby Town as defendant.  Plaintiff alleges Defendant's website violates Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–89.  Am. Compl. ¶¶ 56–70, ECF No. 12.

On September 23, 2025, Judge Pallmeyer in the Northern District of Illinois entered Hobby Town's default.  *See* Sep. 23, 2025 Min. Entry, ECF No. 17.  On October 29, 2025,

Plaintiff requested a change of venue to this Court, *see* Mot. Change Venue, ECF No. 18, which

Judge Pallmeyer granted, *see* Nov. 10, 2025 Min. Entry, ECF No. 21.  On January 27, 2026,

Plaintiff filed the pending motion for default judgment, seeking (1) an injunction which would

require Hobby Town to bring the website into compliance with the ADA within 180 days and (2)

a declaration that the website is in violation of Title III of the ADA.  *See* Mot. Default J. 6.

Plaintiff also requests that the Court reserve jurisdiction to determine reasonable attorney's fees.

*Id.* at 7. [2]

## DISCUSSION

### I.    Legal Standard

A default proceeding is a two-step process.  *See In re Catt*, 368 F.3d 789, 793 (7th Cir.

2004) ("There are two stages in a default proceeding: the establishment of the default, and the

actual entry of a default judgment.").  "When a party against whom a judgment for affirmative

relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default" under Federal Rule of Civil Procedure 55(a).

When the plaintiff's requested relief is not for a sum that is or can be made certain, Rule

55(b)(2) then requires the party to move the court for entry of a default judgment.  After default

is entered, "the well-pleaded allegations of a complaint relating to liability are taken as

true," *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th

Cir. 1983), but "a default is not treated as an absolute confession by the defendant of his liability

and of the plaintiff's right to recover," *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d

---

[2] Plaintiff also sought class action certification; however, in his motion for default judgment, he expressly chooses to no longer seek class relief.  Mot. Default J. 6.  Additionally, Plaintiff appears to have abandoned his negligent infliction of emotional distress claim and his requests for damages for that claim.  *Compare* Am. Compl. 19–20, *with* Mot. Default J.  The Court will treat the claim as abandoned.  *See Okeke v. Nantomah*, No. 25-cv-36-pp, 2025 WL 2494024, at *7 (E.D. Wis. Aug. 29, 2025) (declining to grant damages requested in complaint but not in motion for default judgment); *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived. . . .").

1200, 1206 (5th Cir. 1975); *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) ("[F]acts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment.").  Whether to enter a default judgment is in the court's discretion.  *See Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

## II.     Analysis

### a.  Liability

The Court is satisfied that Hobby Town violated Title III of the ADA.  Title III prevents discrimination against disabled individuals by owners, lessors, or operators of public accommodations.  *See* 42 U.S.C. § 12182(a).  To prevail on a Title III claim, a plaintiff must "show (1) that [he] is disabled within the meaning of the ADA, (2) that [the defendant] owns, leases, or operates a place of public accommodation, and (3) that [he] was discriminated against on the basis of [his] disability."  *Walsh v. Dania Inc.*, 716 F. Supp. 3d 655, 658 (N.D. Ill. 2024) (citing *Mohammed v. DuPage Legal Assistance Found.*, 781 F. App'x 551, 552 (7th Cir. 2019)); *see also McCabe v. Tire Web LLC*, No. 23-cv-459-pp, 2024 WL 4144200, at *4 (E.D. Wis. Sept. 11, 2024) (identifying same elements); *Morey v. McDonald's Corp.*, No. 18 C 1137, 2018 WL 11212379, at *3 (N.D. Ill. Nov. 26, 2018) (identifying same elements).

Plaintiff's allegation that he has visual acuity with correction of less than or equal to 20 x 200 and is therefore legally blind, Am. Compl. ¶ 2, suffices to show that he is disabled within the meaning of the ADA because "the term 'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), and "major life activities include . . . seeing," *id.* § 12102(2)(A).  *See McCabe v. Heid Music Co.*, No. 23-

CV-1215-JPS, 2024 WL 1174352, at *3 (E.D. Wis. Mar. 19, 2024) ("Legal blindness is recognized as a disability under the ADA.").

Hobby Town's website is a place of public accommodation. Although websites are not specifically listed as public accommodations within Title III, *see* 42 U.S.C. § 12181(7), Seventh Circuit decisions suggest that an online storefront would be viewed as such, *see Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (recognizing that Title III applies to both physical and electronic spaces and that "the owner or operator of a . . . Web site . . . that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do" (citation omitted)); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) (declining "to interpret 'public accommodation' literally, as denoting a physical site"),[3] and district courts have widely treated this as considered

---

[3] The First Circuit has held that public accommodations under Title III are not limited to physical structures. *See Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New Eng., Inc.*, 37 F.3d 12, 20 (1st Cir. 1994) (to "limit the application of Title III to physical structures which persons must enter to obtain goods and services would run afoul of the purposes of the ADA"). The Ninth Circuit has held that Title III of the ADA may extend beyond physical spaces if there is some connection to an actual physical place. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("[S]ome connection between the good or service complained of and an actual physical place is required."); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (holding Title III of the ADA applies where a "website . . . facilitate[s] access to the goods and services of a place of public accommodation—[the defendant's] physical restaurants"); *c.f. Lloyd v. Facebook, Inc.*, No. 23-15318, 2024 WL 3325389, at *1 (9th Cir. July 8, 2024) (the ADA claim fails because Facebook is not a place of public accommodation). Although the Third and Sixth Circuits have declined to extend the meaning of public accommodation beyond physical places, *see Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) (declining to extend the meaning of public accommodation to encompass disability benefits); *Peoples v. Discover Fin. Servs.*, 387 F. App'x 179, 183–84 (3d Cir. 2010) (declining to extend the meaning of public accommodation to encompass communications between a credit card processing terminal and the defendant); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1013–14 (6th Cir. 1997) (declining to extend the meaning of public accommodation to include a benefit plan), district courts have distinguished these cases and found that Title III protections can extend to websites, *see Gniewkowski v. Lettuce Entertain You Enters.*, 251 F. Supp. 3d 908, 918–19 (W.D. Pa. 2017) (finding a cognizable Title III claim where alleged discrimination took place on the defendant's website); *Mahoney v. Bittrex, Inc.*, No. 19-3836, 2020 WL 212010, at **2–3 (E.D. Pa. Jan. 14, 2020) (holding that websites can be places of public accommodation where there is a nexus between a physical place of public accommodation and the services or goods denied); *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 881 (N.D. Ohio 2018) (finding a Title III claim sufficient to survive a motion to dismiss where "[the plaintiff] ha[d] sufficiently alleged a nexus between [the defendant's] website and its brick-and-mortar stores"). The Fifth Circuit has declined to extend the meaning of public accommodation beyond physical places, *see Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 535 (5th Cir. 2016) (declining to extend the meaning of public accommodation to encompass vending machines), which district courts have interpreted as meaning that websites cannot be places of public accommodation and are not covered by Title III, s*ee Strojnik v. Landry's Inc.*, No. 4:19-CV-01170, 2019 WL 7461681, at *6 (S.D. Tex. Dec. 9,

dictum[4] in finding that websites are public accommodations, *see, e.g.*, *Colon v. HY Supplies, Inc.*, No. 22 CV 5915, 2023 WL 7666740, at *6 (N.D. Ill. Nov. 15, 2023) (following *Morgan* dictum in holding that "a 'place of public accommodation' does not have to be a physical space"); *Walsh*, 716 F. Supp. 3d at 660; *Wright v. Thread Experiment, LLC*, No. 1:19-cv-01423-SEB-TAB, 2021 WL 243604, at *3 (S.D. Ind. Jan. 22, 2021). Given that recent considered "dictum provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it," *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994), the Court elects to follow this guidance. As such, the website operated by Hobby Town is a place of public accommodation.

Plaintiff was discriminated against on the basis of his disability by being prevented from fully enjoying the use of the website and the goods and services Hobby Town sells through it. Proving that discrimination occurred on the basis of a disability does not require intent. *See A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018). It is enough that a disabled individual be discriminated against "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). District courts have found that barriers for blind individuals in navigating a website are sufficient to constitute discrimination in the full enjoyment of goods and services. *See Walsh*, 716 F. Supp. 3d at 661 (finding that stating specific barriers and how they impeded use of a website to purchase furniture was sufficient to allege discrimination); *Wright*, 2021 WL

---

2019) ("[A]n ADA claim [can] not be based on the alleged deficiencies in a business' website because a website is not a place of public accommodation." (citing *Magee*, 833 F.3d at 534–36)); *Zaid v. Smart Fin. Credit Union*, No. H-18-1130, 2019 WL 314732, at *6 (S.D. Tex. Jan. 24, 2019) (relying on *Magee* and finding that "[b]ecause a website is not a place of public accommodation under the ADA, [the defendant] cannot be liable for its website's alleged failure to comply with the ADA").

[4] Considered dictum is "recent dictum that considers all the relevant considerations and adumbrates an unmistakable conclusion." *See Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994).

243604, at *3 (finding that the plaintiff sufficiently pled a violation of Title III where the website was inaccessible to blind individuals); *Heid*, 2024 WL 1174352, at *4–5 (finding that a digital program's incompatibility with screen-reading software was sufficient to satisfy the discrimination element).  Plaintiff has alleged that accessibility issues prevented him from navigating the website to make a purchase as a nondisabled person could, including an inability to make a purchase on the website independently.  *See* Am. Compl. ¶¶ 35–36.  Consequently, if he wished to make a purchase, Plaintiff was required to go to a brick-and-mortar store.  *Id.* ¶ 37. This is a discriminatory barrier to Plaintiff's full use and enjoyment of a public accommodation. *Cf. Walsh*, 716 F. Supp. 3d at 661 ("It is of no consequence that [the plaintiff] could have called or emailed [the defendant] to complete [the plaintiff's] purchase.").

### b. Relief

In Plaintiff's motion for default judgment, he requests (1) declaratory relief, (2) injunctive relief, and (3) that the Court reserve jurisdiction to determine attorney's fees.  Mot. Default J. 6–7.  The Court can easily dispose of the first and third requests.  Plaintiff may file a request for attorney's fees after entry of judgment pursuant to Civil Local Rule 54.1.  Attorney's fees are available under the ADA, *see* 42 U.S.C. § 12205, though due to the Court's concerns about inaccurate citations and potential AI use, such a request may be denied, *see infra* Section II(c).  And declaratory relief is inappropriate here.  The purpose of declaratory judgment is to "settle the disputed legal relationships and afford relief from . . . uncertainty."  *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994). Where, as here, the disputes are being resolved in the instant lawsuit, declaratory relief is inappropriate.  *See Field v. Hous. Auth. of Cook Cnty.*, No. 17-cv-02044, 2018 WL 3831513, at *10 (N.D. Ill. Aug. 13, 2018) (denying declaratory relief where it "would do nothing to clarify

the legal relations between the parties for any future litigation because [the plaintiff] [was] already pursuing [the] claims . . . in the instant lawsuit").

Injunctive relief is the only remedy available under Title III itself. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013). However, injunctive relief does not automatically issue upon a violation because, "although a default judgment establishes liability, it does not answer whether any particular remedy is appropriate." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). Injunctive relief may be awarded at the default judgment stage, *see Wright*, 2021 WL 243604, at *4 ("[I]njunctions [are] commonly issue[d] as part of default judgments."), although the "judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c). To receive a permanent injunction, a plaintiff must demonstrate

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[5] Courts must conduct a balancing exercise even when injunctive relief is the only relief authorized by statute. *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019).

Here, Plaintiff qualifies for injunctive relief. Accepting Plaintiff's factual allegations as true, the first two elements are satisfied. Plaintiff was unable to use the website to make a purchase, and this deprivation of Hobby Town's services constitutes irreparable harm. Am.

---

[5] In Plaintiff's motion, he cites *Liebhart v. SPX Corp.*, 998 F.3d 772, 779 (7th Cir. 2021), as support for applying a different four-factor test for permanent injunctions than the one recited above. Mot. Default J. 4. *Liebhart* provides the same four factors recited above, and in fact includes the exact same quote, *Liebhart*, 998 F.3d at 779 (citing *eBay*, 547 U.S. at 391), so it is unclear where Plaintiff has sourced the test he applies in his motion. The Court will apply the four-factor *eBay* test and will address this and other legal inaccuracies in its discussion of its order to show cause. *See infra* Section II(c).

Compl. ¶ 10; *see Heid*, 2024 WL 1174352, at *7 (holding that an inability to access business offerings on a digital platform was an irreparable harm); *Wright*, 2021 WL 243604, at *4–5 (granting a permanent injunction where website was inaccessible to individuals with vision impairments); *LAJIM*, 917 F.3d at 945 (finding that where an environmental statute authorizes only injunctive relief, "[t]he proven harm is, by definition, irreparable absent an injunction"). Because injunctive relief is the only kind of relief available under Title III of the ADA, the second element is satisfied as well—absent an injunction, there will be no remedies available at all to Plaintiff.  *See Heid*, 2024 WL 1174352, at *7;

The remaining two elements are also satisfied.  The balance of hardships weighs in favor of granting Plaintiff a permanent injunction, given that the hardships suffered by Hobby Town in the present case (costs incurred by updating its website) would be relatively minor.  Requiring defendants to make their websites accessible to disabled individuals is a small burden, *see Wright*, 2021 WL 243604, at *4 ("[W]e discern no hardship, beyond incurring certain costs necessary to bring [the website] into compliance with the ADA, that will be suffered by [the d]efendant."), and is outweighed by the harm a plaintiff suffers when unable to patronize businesses through their online platforms, *see Heid*, 2024 WL 1174352, at *7 (holding that "the hardship of being unable to access [the defendant's] Digital Platform and . . . inability to patronize the [the d]efendant business to the same degree as those individuals not falling within the protection of the ADA" outweighs any burden placed on the business).  And the public interest would not be disserved by a permanent injunction because "the public has a strong interest in eliminating discrimination and in enforcing the ADA."  *See Wright*, 2021 WL 243604, at *4 (quotation marks omitted); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001) ("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals.").

9

Even though the elements for injunctive relief have been met, "the Court must assure itself that the injunctive relief sought is appropriately tailored to address the violation." *Heid*, 2024 WL 1174352, at *8; *see also Nat'l Org. for Women, Inc. v. Scheidler*, 396 F.3d 807, 817 (7th Cir. 2005) (referencing "the rule requiring courts to tailor injunctive relief to the scope of the violation found").  The Court is satisfied that Plaintiff's proposed order for injunctive relief is tailored to the scope of the ADA violation.  The specific injunctive relief requested relates to discrete instances of discriminatory web design, and Plaintiff's Amended Complaint alleges that these elements of the website's design operate specifically as a barrier to blind individuals because of either incompatibility with screen readers or keyboard-only navigation.  *Compare* Mot. Default J. 6, *with* Am. Compl. ¶¶ 33, 35.  The proposed injunctive relief relates specifically to those instances where the website's design "interfere[s] with a plaintiff's ability to enjoy a public accommodation in a manner akin to that which nondisabled individuals enjoy," *Walsh*, 716 F. Supp. 3d at 661, and where an "individual with a disability is . . . denied services. . . or otherwise treated differently," 42 U.S.C. § 12182(b)(2)(A)(iii).  In other words, the proposed injunctive relief applies specifically to instances in which Title III of the ADA was violated under the facts of this case, so the injunction will not "depart[] from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013).  Because the elements for injunctive relief have been met and the relief sought is appropriately tailored to address the Title III violations, injunctive relief is warranted here.  *Cf. Kennedy v. Kabir Pramukh Macomb Hosp. LLC*, No. 1:20-cv-01134-SLD-JEH, 2021 WL 4494273, at *4 (C.D. Ill. Sept. 30, 2021) ("Because injunctive relief must be specific, it is

10

imperative that [the p]laintiff be clear about what information she believes the websites were lacking in order for the Court to address the possibility of injunctive relief." (citation omitted)).

### c. Order to Show Cause

In reviewing Plaintiff's motion, the Court has uncovered numerous citations that appear to be fabricated or do not support the propositions for which they are cited. Plaintiff's first citations in paragraphs eighteen and nineteen could not be located on either Lexis or Westlaw.[6] Mot. Default J. 4. Further, Plaintiff's citations in paragraphs seventeen, twenty-five, and twenty-six do not support the propositions for which they are cited. In paragraph seventeen, *id.*, Plaintiff cites *Liebhart v. SPX Corp.*, 998 F.3d 772 (7th Cir. 2021), as support for the four factors that courts apply in permanent injunctive relief cases. However, the four factors recited in Plaintiff's Motion are not the four factors that *Liebhart* provides. *Compare id.* at 779, *with* Mot. Default J. 4. In paragraph twenty-five, Plaintiff cites *Goodman v. Illinois Department of Financial and Professional Regulation*, 430 F.3d 432 (7th Cir. 2005), for the proposition that "Title III of the ADA does not provide compensatory or punitive damages." Mot. Default J. 5–6. Although it is true that compensatory and punitive damages are unavailable under the ADA, *see Heid*, 2024 WL 1174352, at *7, *Goodman* makes no mention of the ADA—it discusses a First Amendment challenge to the Illinois Medical Practice Act. 430 F.3d at 434. In paragraph twenty-six, Plaintiff cites *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918 (7th Cir. 2008), for the proposition that "the required fixes . . . are modest in cost relative to the harms avoided." Mot. Default J. 6. *Sierra Club* has nothing to do with websites, the ADA, or the costs associated with altering a website; rather, it is about an environmental organization seeking injunctive relief to prohibit the construction of a coal power plant. 546 F.3d at 922.

---

[6] The Court does not include the hallucinated citations or discuss them with more specificity to avoid these nonexistent citations becoming part of a published record which could be cited in the future.

The Court is deeply troubled by these errors.  When filing with a court, an attorney represents that "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).  "Adherence to these rules is crucial to the administration of justice" because "[v]iolations . . . result in confusion and time wasted . . . tracking[ing] down . . . false citations, seek[ing] explanations from counsel, and evaluat[ing] the magnitude of the violations." *Dec v. Mullin*, 171 F.4th 940, 948 (7th Cir. 2026).  Furthering the Court's concern is the fact that hallucinated cases are a telltale sign of AI usage.  AI usage is of special concern to the Court because "[i]t promotes cynicism about the legal profession and the American judicial system." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023).  In addition, "[w]hile the court takes time to investigate, other cases may be disrupted or deprived of judicial attention." *Virgil v. Experian Info. Sols. Inc.*, No. 1:25-cv-01641-MPB-MJD, 2026 WL 401066, at *4 (S.D. Ind. Feb. 12, 2026).  Finally, and perhaps what should have been most troubling to Plaintiff's counsel here, is that, as a result of AI usage, "client[s] may be deprived of arguments based on authentic judicial precedents." *Mata*, 678 F. Supp. 3d at 448.

Notably, this is not the first time that Plaintiff's counsel, Attorney David Reyes, has been responsible for inaccurate citations.  In *Hippe v. Retention Brands, LLC*, No. 25-CV-596, 2026 WL 1802971, at **2–3 (E.D. Wis. June 23, 2026), he was ordered to show cause for inaccurate citations that "[bore] . . . AI fingerprints."  (noting that the motion for default judgment filed by Attorney Reyes contained two hallucinated cases and relied on *Goodman* and *Sierra Club* for propositions wholly unsupported by the cases).

12

Pursuant to Federal Rule of Civil Procedure 11(c)(3), Reyes is ordered to explain the source of these inaccuracies, including any AI usage, and why he should not be subject to sanctions from the Court.

## CONCLUSION

Accordingly, Plaintiff Morgan Cole's motion for default judgment, ECF No. 25, is GRANTED IN PART and DENIED IN PART.  Plaintiff's claim for declaratory relief is DENIED, and his claim for injunctive relief is GRANTED.  Attorney David Baldemar Reyes, counsel for Cole, is ORDERED TO SHOW CAUSE why he should not be sanctioned for the inclusion of fabricated and inaccurate citations by August 7, 2026.  Plaintiff may file a request for attorney's fees no later than fourteen days after the entry of judgment, pursuant to Civil Local Rule 54.1.  The Court will issue a separate injunction pursuant to Federal Rule of Civil Procedure 65(d).

Entered this 24th day of July, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

13