E-FILED
Wednesday, 02 September, 2026 11:03:48 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MORGAN COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04217-SLD-RLH |
| | ) | |
| HOBBY TOWN UNLIMITED, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Attorney David Baldemar Reyes's response to the Court's show cause order, ECF No. 32. For the reasons that follow, Reyes is ORDERED to pay a fine of $1,000 and send a copy of this order to the Illinois Attorney Registration and Disciplinary Commission ("ARDC").

**BACKGROUND**[1]

Reyes filed a lawsuit on behalf of Plaintiff Morgan Cole alleging that Defendant violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–89, because Cole, a visually-impaired individual, could not navigate its website. *See generally* Am. Compl., ECF No. 12. Defendant did not appear and Cole moved for entry of default. Request for Default, ECF No. 16. Default was entered, Sep. 23, 2025 Min. Entry, ECF No. 17, and on January 27, 2026, Cole moved for default judgment, *see* Mot. Default J., ECF No. 25. Although the Court granted Cole's motion for default judgment on July 24, 2026, *see generally* July 24, 2026 Order, ECF No. 27, the motion contained several hallucinated citations, classic indicators of unverified artificial intelligence ("AI") usage, *id.* at 11–13. The Court identified a case in the Eastern

[1] A more comprehensive discussion of both the underlying facts of this case and the procedural history can be found in the Court's default judgment order. *See generally* July 24, 2026 Order, ECF No. 27.

District of Wisconsin in which Reyes was ordered to show cause for inclusion of the exact same improper citations in a different motion for default judgment. *Id.* (discussing *Hippe v. Retention Brands, LLC*, No. 25-CV-596, 2026 WL 1802971, at *2–3 (E.D. Wis. June 23, 2026)). Accordingly, the Court directed Reyes to show cause why he should not be sanctioned by August 7, 2026. *Id.* Reyes requested an extension of time, indicating that he would be retaining an attorney before filing a response. Aug. 7, 2026 Status Rep., ECF No. 30. The Court granted Reyes's request for an extension of time and directed any requests for attorneys' fees to be filed simultaneously. Aug. 10, 2026 Text Order, ECF No. 31 ("Reyes may file his supplemental response and any request for attorneys' fees and costs by August 21, 2026."). Reyes timely filed his response to the Court's order to show cause. *See generally* Resp. He did not submit a request for attorneys' fees or costs. Defendant has never appeared.

## DISCUSSION

### I. Legal Standard

A district court may impose sanctions under Federal Rule of Civil Procedure 11 when a lawyer "submits frivolous legal arguments—those not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1079 (7th Cir. 2018) (quotation marks omitted); Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[S]anctions are a collateral matter, which courts generally can resolve after a judgment is rendered." *Hurston v. Ind. Gaming Co. LLC*, No. 23-1099, 2023 WL 8111460, at *3 (7th Cir. Nov. 22, 2023). The appropriateness of imposing Rule 11 sanctions requires "an

objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Fed'n of State Med. Bds. of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987) (noting that Rule 11 requires attorneys to make "a reasonable inquiry into the law"), *overruled on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989). "Good faith is not a defense to the imposition of Rule 11 sanctions." *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987).

A court may issue monetary or nonmonetary sanctions and must ensure that such sanction is only so great as necessary to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Rule 11 "does not attempt to enumerate the factors" which courts should consider when determining appropriate sanctions. *Id.* advisory committee's note to 1993 amendment. Instead, the advisory committee's note recognizes that there are a variety of relevant considerations, including:

> [w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants.

*Id.* Courts are "permitted to consider [the party's] past conduct in fashioning Rule 11 sanctions." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001).

## II. Analysis

In his response to the Court's order to show cause and his attached declaration, Reyes "acknowledges" that the motion contained citations which "were inaccurate and should not have been included without independent verification." Resp. 2. He states that these citations were included in his motion because he prepared a template using AI, which inserted those

hallucinated citations. *Id.* Reyes "accepts full responsibility for those errors." *Id.* He requests the Court exercise its discretion to impose no—or at worst, minimal—sanctions, arguing that (1) he has "accepted full responsibility and implemented meaningful corrective measures," *id.* at 5–7; (2) the show cause order in *Hippe* was entered months after he filed the motion for default judgment in this case, *id.* at 7–8; and (3) if the Court chooses to impose sanctions, it should follow the Seventh Circuit's reasoning in *Dec v. Mullin*, 171 F.4th 940 (7th Cir. 2026), and only impose minimal ones, *id.* at 8–9.

Reyes's citation to non-existent cases and misrepresentation of others is not objectively reasonable, and thus merits sanctions. Despite the relatively new nature of and the unique challenges presented by AI, district courts across the Seventh Circuit have consistently and frequently held that the inclusion of even a few hallucinated or mischaracterized cases in filings violates Rule 11. *See, e.g.*, *Allen v. Casper*, No. 25 C 10438, 2026 WL 674309, at *10 (N.D. Ill. Mar. 10, 2026); *Maldonado v. Pro. Animal Ret. Ctr.*, No. 1:25-CV-454-HAB-ALT, 2026 WL 925530, at *8 (N.D. Ind. Apr. 1, 2026); *Virgil v. Experian Info. Sols. Inc.*, No. 1:25-cv-01641-MPB-MJD, 2026 WL 401066, at *3–5 (S.D. Ind. Feb. 12, 2026). Under a few different disciplinary vehicles, the Seventh Circuit has also repeatedly found such conduct to be worthy of sanction. *See, e.g.*, *Dec*,[2] 171 F.4th at 947–48 (proceeding under Federal Rule of Appellate Procedure 38); *Perez-Castillo v. Blanche*, 177 F.4th 837, 846–48 (7th Cir. 2026) (proceeding under Federal Rules of Appellate Procedure 28 and 46); *D'Ambrosio v. Meta Platforms, Inc.*,

---

[2] Although the Seventh Circuit found it plausible that counsel in *Dec* did not actually use AI, the opinion discusses the dangers of filings containing hallucinated cases, which are only heightened by the proliferation of AI, and emphasizes that the court's "concern lies with trained lawyers failing to check the accuracy of legal citations and quotations in their filings." *Dec*, 171 F.4th at 947. Moreover, the Seventh Circuit has since cited *Dec* as a case about improper AI usage. *See, e.g.*, *Perez-Castillo v. Blanche*, 177 F.4th 837, 847 (7th Cir. 2026) (citing *Dec* as a "case involving the misuse of AI" which did not merit sanctions); *D'Ambrosio v. Meta Platforms, Inc.*, 176 F.4th 928, 941–42 (7th Cir. 2026) (discussing suspected AI usage in a brief and citing *Dec* to support the assertion that "[s]ubmitting fictitious quotations to a court, regardless of how they are generated, is obviously inconsistent with the standards of conduct this court expects from attorneys").

176 F.4th 928, 941–42, 945 (7th Cir. 2026) (proceeding under Federal Rules of Appellate Procedure 38 and 46 and 28 U.S.C. §§ 1912, 1927).

When determining the appropriate sanction for citation errors bearing hallmark signs of AI usage, courts consider: (1) the frequency of the errors; (2) whether the citations supported legal standards or advanced party arguments; (3) whether counsel apologizes and takes accountability; (4) any remedies counsel outlines to prevent similar errors in the future; (5) any relevant prior conduct; and (6) future deterrence. *Dec*, 171 F.4th at 947–48; *see also Perez-Castillo*, 177 F.4th at 846–49; *Mid. Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211, at *1–2 (S.D. Ind. May 28, 2025). When courts find counsel's contrition persuasive and the errors are minor, they tend to issue nonmonetary sanctions, *see, e.g.*, *Dec*, 171 F.4th at 947–48 (admonishing counsel for including AI-hallucinated citations and quotations but declining to impose any additional consequences), or forego sanctions altogether, *Hippe v. Retention Brands, LLC*, No. 25-cv-596, 2026 WL 2043246, at *1 (E.D. Wis. July 15, 2026) (finding that Reyes's decision to withdraw any request for attorneys' fees constituted sufficient consequences). However, when courts are not so persuaded, there is evidence of prior improper conduct, or the errors are significant, courts have instead imposed monetary sanctions. *See, e.g.*, *Perez-Castillo*, 177 F.4th at 848–49 (imposing a $5,000 sanction on one attorney who submitted a brief containing various AI hallucinations and, after being ordered to fix all citation errors, re-entered the brief with several of the same hallucinated quotations, and referring the other, who admitted to preparing both versions of the brief with assistance from ChatGPT and without further cite checking but expressed great remorse, to the state attorney disciplinary authorities); *Mid Cent. Operating*, 2025 WL 1511211, at *2 (imposing a $6,000 sanction on an attorney because he filed three

separate briefs containing non-existent AI-generated citations and "the penalties imposed on other attorneys for similar misconduct have evidently failed to act as a deterrent" (quotation marks omitted)).

In this case, significant and monetary sanctions are appropriate not because the citation errors themselves were particularly egregious—the motion included just four citation errors, *see* July 24, 2026 Order 11 (discussing Mot. Default J. 4–6), and although the citations advanced Cole's argument, each of the arguments they supported are generally accepted, *see* Mot. Default J. 4–6—but because of the context in which Reyes engaged in this conduct. It is true that Reyes takes full responsibility for the citation errors and does not attempt to minimize the severity of these errors. *See generally* Resp. In fact, Reyes's response to the order to show cause is, at first review, quite compelling. He admits that he "conducted legal research and relied in part on prior work product developed with the help of AI in similar ADA Title III matters, as a drafting aid and template," and "recognizes that while AI and templates may serve as drafting aids, the same can never substitute for independently locating, reviewing, and verifying every authority cited in a pleading." *Id.* at 3. He further emphasizes that these errors were not committed knowingly but acknowledges "that the absence of such intent does not excuse the failure to independently verify the authorities before filing." *Id.* at 4. He also identifies several preventative measures that he is already taking to ensure such errors do not occur in the future. *Id.* at 4, 6–7.

Reyes's contrition unravels, however, upon closer examination. This is at least the third case in which he has filed briefings with AI hallucinations. In October 2025, he filed a nearly identical motion for default judgment in *Hippe* which included the same faulty citations. *See* Mot. Default J., *Hippe*, No. 25-cv-596, ECF No. 11. An order to show cause was not entered in that case until June 23, 2026. *See generally Hippe*, 2026 WL 1802971.

In December 2025, in Northern District of Illinois case *Pittman v. Hazel & Olive, Inc.*, 1:25-cv-07791,[3] Reyes filed a response opposing a motion to dismiss. *See* Resp. Mot. Dismiss, *Pittman*, 1:25-cv-07791, ECF No. 32. The defendant promptly filed a motion to strike the response due to citations of fake cases. Mot. Strike Resp., *Pittman*, 1:25-cv-07791, ECF No. 35. On January 14, 2026, the court found that Reyes's response contained at least two hallucinated cases. Jan. 14, 2026 Min. Entry, *Pittman*, 1:25-cv-07791, ECF No. 37. It struck the response, directed him to file an additional response addressing these hallucinations, and deferred imposition of any sanctions until receipt of his response and any reply from Defendant. *Id.* On January 20, 2026, Reyes filed his response, admitting that the hallucinated citations resulted from AI usage and insufficient cite checking. Resp. Mot. Strike 1–2, *Pittman*, 1:25-cv-07791, ECF No. 38. Reyes stated that he had "implemented corrective measures to prevent a recurrence" and indicated that all citations and quotations would be "independently verified" prior to inclusion in court filings. *Id.* at 2. Just seven days later, on January 27, 2026, Reyes filed the motion for default judgment in this case that contained multiple AI-hallucinated cases. *See generally* Mot. Default J.

So, while Reyes is correct that the order to show cause had not been entered in *Hippe* when he filed the motion for default judgment in this case, Resp. 7–8, by that time, one of his filings had already been stricken for inappropriate AI usage, he had already identified that the inclusion of hallucinated cases in his work is concerning and inappropriate, and he had already claimed to have immediately implemented multiple corrective measures to prevent such future errors. That Reyes again submitted a filing with AI hallucinations and other citation errors just a

[3] Although the Court did not identify Reyes's prior conduct in *Pittman* in its order to show cause, Reyes relies upon it in his response and argues it is a basis for issuing lesser sanctions. As such, he put it directly at issue for the Court's consideration.

week after telling another court that he was "embarrassed that this occurred," and that "[g]oing forward, no citation or quotation will be included in any filing unless it has been independently verified against the underlying opinion in Westlaw or Lexis prior to submission," Resp. Mot. Strike 2, *Pittman*, 1:25-cv-07791, ECF No. 38, raises serious questions about the sincerity of his supposed contrition in this case and the efficacy of any preventative measures he says he will implement.

In his response to this Court's show cause order, Reyes merely provides slightly more details about the corrective measures he informed the *Pittman* court that he began implementing on January 20, 2026. *Compare* Resp. 6 (noting implementation of "enhanced citation-verification procedures designed to ensure that every legal authority contained in future pleadings is independently located, reviewed, and verified before submission to any court," including a final citation review prior to filing any briefings), *with* Resp. Mot. Strike 2, *Pittman*, 1:25-cv-07791, ECF No. 38 ("Going forward, no citation or quotation will be included in any filing unless it has been independently verified against the underlying opinion in Westlaw or Lexis prior to submission."). The Court recognizes that there are few corrective measures available to remedy the inclusion of hallucinated cases in filings—the simplest solution being to cite check one's work prior to filing. Reyes either disingenuously represented to the *Pittman* court that he had implemented corrective measures to ensure independent verification of all citations and quotations or those measures were implemented in an entirely ineffective manner, as demonstrated by the nearly immediate repetition of the problematic conduct. The Court is not inclined to rely upon Reyes's promise when it has clearly, for whatever reason, failed in the past. Reyes also attempts to present his cooperation with an ongoing ARDC investigation and retaining counsel as further corrective measures, *see* Resp. 4, 6–7, but he does not provide, nor

does the Court discern, any connection between these actions and taking the basic cite checking measures required to ensure that filings do not contain hallucinations. As such, the Court is utterly unconvinced by Reyes's apology, accountability, and proposed corrective measures.

Reyes has prior instances of comparable improper behavior. Although the *Hippe* show cause order had not yet been entered, it is clear that, at best, Reyes failed at implementing the corrective measures he told the *Pittman* court he would make when he entered a motion for default judgment before this Court that was nearly identical to that in *Hippe*, down to the hallucinations. *Compare* Mot. Default J., *with* Mot. Default J., *Hippe*, 2:25-cv-00596-LA, ECF No. 11. And it is likewise clear that deterrence of future conduct by both Reyes and others is a significant concern. Fed. R. Civ. P. 11(c)(4). Reyes's sanctions thus far have been relatively lenient. *See* Jan. 14, 2026 Min. Entry, *Pittman*, 1:25-cv-07791, ECF No. 3 (striking Reyes's motion); Mar. 19, 2026 Order, *Pittman*, 1:25-cv-07791, ECF No. 49 (ordering Reyes to report the incident to the ARDC for investigation, pay the defendant's attorneys' fees and costs, and dismissing the case with prejudice); July 15, 2026 Order, *Hippe*, 2:25-cv-00596-LA, ECF No. 16 (deciding against imposing sanctions because he withdrew any requested attorneys' fees). Moreover, that these AI hallucinations continue to appear in filings indicates a need for greater deterrence at large, not just for Reyes. *See, e.g.*, *Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr.*, No. 1:24-cv-01918-JRO-MJD, 2026 WL 1408448, at *5 (S.D. Ind. May 20, 2026) ("Monetary sanctions are appropriate to deter similar detachment [which fake citations represent] in others and encourage a renewed commitment to the duties of candor and diligence in an age of advancing technology."); *Virgil v. Experian Info. Sols. Inc.*, No. 1:25-cv-01641-MPB-MJD, 2026 WL 401066, at *5 (S.D. Ind. Feb. 12, 2026) (referring counsel for disciplinary proceedings and

recommending a $10,000 sanction because "it is clear that the imposition of modest sanctions has failed to act as a deterrent").

Therefore, the Court finds it appropriate to impose a monetary sanction of $1,000 and to require Reyes to send a copy of this order to the Illinois ARDC. The monetary sanction of $1,000 is sufficient but no greater than necessary to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). A $1,000 sanction, while not insignificant, is modest relative to other recent sanctions for similar citation errors. *See, e.g.*, *Mid. Cent. Operating*, 2025 WL 1511211, at *1–2 (imposing a $6,000 sanction upon counsel who filed "briefs containing non-existent AI-generated legal citations on three separate occasions and the penalties imposed on other attorneys for similar misconduct have evidently failed to act as a deterrent" (quotation marks omitted)); *Allen*, 2026 WL 674309, at *10 (imposing a $1,500 sanction upon a *pro se* litigant whose filing included at least two hallucinated cases and false statements of law); *Davis*, 2026 WL 1408448, at *6 (imposing a $2,000 sanction upon counsel who filed one brief containing two hallucinated citations); *Perez-Castillo*, 177 F.4th at 847–48 (imposing a $5,000 sanction under Federal Rule of Appellate Procedure 46 upon counsel who filed a brief containing several AI hallucinations and, after being put on notice of the deficiencies, resubmitted the brief with at least two of the prior hallucinated quotations still included). However, the Court finds it appropriate given the circumstances of this case. The Court is unconvinced by Reyes's apology and proposed corrective measures; finds that his relevant prior conduct supports and deterrence is served by a monetary sanction; and finds that the purpose of the improper citations in advancing party arguments cancels out the mitigating nature of the relatively small number of citation errors. Nevertheless, the Court recognizes that

the only consequence Reyes had suffered by the time he filed the motion for default judgment in this case was a stricken motion.

**CONCLUSION**

Accordingly, Attorney David Baldemar Reyes is ORDERED to pay a fine of $1,000 to the Clerk of Court within sixty days and send a copy of this order to the Illinois Attorney Registration and Disciplinary Commission. Reyes must also file a status report with the Court within sixty days, updating the Court on the status of his compliance with this order. Because no request for attorneys' fees and costs has been timely made, the Court declines to award any.

Entered this 2nd day of September, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE